UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**RICHARD MCNATT**,

        Plaintiff,

        v.

**CAROLYN COLVIN**, Commissioner
Social Security Administration,

        Defendant.

Civil Case No. 3:13-CV-01790-KI

OPINION AND ORDER

    Merrill Schneider
    Schneider Kerr & Gibney Law Offices
    P. O. Box 14490
    Portland, Oregon  97293

        Attorney for Plaintiff

    S. Amanda Marshall
    United States Attorney
    District of Oregon

Page 1 - OPINION AND ORDER

Ronald K. Silver
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97201-2902

Gerald J. Hill
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Richard McNatt brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). I reverse the decision of the Commissioner and remand for a finding of disability.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the Administrative Law Judge ("ALJ"). The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the

Page 3 - OPINION AND ORDER

claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, the ALJ makes a finding of "not disabled" and disability benefits are denied.  20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is unable to perform other work.  20 C.F.R. §§ 404.1520(f), 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance.  Id. (internal quotation omitted).  The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations.  Id.

## THE ALJ'S AND APPEALS COUNCIL'S DECISIONS

The ALJ found McNatt had severe impairments of lumbar degenerative disc disease, borderline intellectual functioning, hypertension, and depression.  The ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.

Page 4 - OPINION AND ORDER

After reviewing the record, the ALJ found McNatt has the residual functional capacity to perform less than the full range of light work; he can stand and walk for four of eight hours; he can occasionally climb, stoop, crouch, kneel, and crawl; he can frequently finger and handle bilaterally; he is limited to performing simple, entry level work; he should not perform work requiring reading instructions or making written reports; and he should not perform hand to hand transactional activities with the public.  Based on vocational expert testimony, the ALJ found McNatt could work as an electronics worker and a packing line worker and, thus, was not disabled under the Act.

The Appeals Council granted review of the case and issued a partially favorable decision. It found McNatt has the residual functional capacity to perform work at the sedentary level; he is limited to unskilled work activity; and he should not perform hand-to-hand transactional activities with the public.  Based on the Medical Vocational Guidelines, the Appeals Council found McNatt disabled as of December 9, 2011, when he attained age 50.

## FACTS

McNatt alleges he became disabled on September 30, 2010,[1] when he was 48 years old, due to back problems and a learning disability.  He left school in the ninth grade.  McNatt worked for about fifteen years as a flagger.

McNatt complains of lower back pain subsequent to an injury at work in 2010.  At times, the pain is so severe he cannot get out of bed.  McNatt controls the pain with narcotic pain medication.

---

[1] McNatt originally alleged disability beginning January 1, 2010, but he amended his alleged onset date at the hearing before the ALJ.

Page 5 - OPINION AND ORDER

McNatt lives with his partner, but has some trouble getting along with other people. He performs all the general housekeeping chores, yard work, and shopping.

## DISCUSSION

I.   Listing 12.05C, Intellectual Disability

McNatt argues the Appeals Council erred in failing to find he met intellectual disability Listing 12.05C since his alleged onset date and, consequently, was disabled prior to the age of 50.

The listings set out at 20 C.F.R. § 404, Subpart P, Appendix 1 are "descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990). For a claimant to show that his impairment matches one of those listed, the impairment must meet all of the specified medical criteria. Id. at 530. "A generalized assertion of functional problems is not enough to establish disability at step three." Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999). The claimant bears the burden of proving she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations. Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

Listing 12.05C states:

> 12.05  Intellectual disability:  intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .

Page 6 - OPINION AND ORDER

>C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

The ALJ did not address this listing.  The Appeals Council reasoned:

>However, Listing 12.05, Intellectual Disability, refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  In this case, the claimant's earning's record reveals a consistent pattern of earnings at substantial gainful activity level, indicating that the claimant's mental impairments have not resulted in significant work-related limitation of function.

Tr. 5-6.

The Commissioner argues McNatt has been diagnosed with borderline intellectual functioning, but not intellectual disability, and thus does not meet Listing 12.05C.  Although the Ninth Circuit has not given specific guidance on the issue, the Eighth Circuit held that a formal diagnosis of intellectual disability is not required.  Christner v. Astrue, 498 F.3d 790, 793 (8th Cir. 2007) (holding made prior to amendment of the listing term mental retardation); see also Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir. 2013) (interpreting Listing 12.05C factors as subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22, a valid IQ score of 60 to 70, and a physical or other mental impairment imposing an additional and significant work-related limitation, implying no formal diagnosis of intellectual disability was required).  Other courts in the District of Oregon have come to the same conclusion.  Pedro v. Astrue, 849 F. Supp. 2d 1006, 1010 (D. Or. 2011); Lloyd v. Astrue, No. 3:11-cv-00951-RE, 2012 WL 4794152, at *2 (D. Or. Oct. 5, 2012) (no formal diagnosis of mental retardation irrelevant); Brooks v. Astrue, No. 3:11-cv-01252-SI, 2012 WL 4739533, at *5 (D. Or. Oct. 3, 2012) (same).

Page 7 - OPINION AND ORDER

I see no reason not to follow the lead of the Eighth Circuit.  McNatt's diagnosis of borderline intellectual functioning is adequate to meet the listing as long as he meets the rest of the capsule definition in the first paragraph of Listing 12.05:  "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  Adaptive functioning refers to the person's "progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age.  Indicators of adaptive behavior include childhood developmental milestones (e.g., when did the individual first crawl, walk, tie shoes, feed/dress self, etc.), as well as educational and social achievements."  Social Security Administration's Program Operations Manual System ("POMS") DI 24515.056 (Sept. 13, 2012), <u>available at</u> https://secure.ssa.gov/poms.nsf/lnx/0424515056.

The Commissioner relies on McNatt's work history and daily activities, in which he is independent, to support the Appeals Council's conclusions.  Due to the Appeals Council's unchallenged finding that McNatt was not credible, the Commissioner also cautions against relying on McNatt's own statements concerning the manifestation of his intellectual impairment.

McNatt argues his ability to earn at a substantial gainful activity level in the past does not factor into whether he meets a listing as of his alleged onset date.  In his view, a claimant could be able to work with his intellectual disability and not meet the listing requirements until he develops an additional impairment.

I agree with McNatt–subparts A, B, and D of Listing 12.05, but not subpart C, come into play when a person's intellectual disability is so severe it prevents him from ever earning at a

substantial gainful activity level. Subpart C covers McNatt's situation of suffering from additional impairments which started when he was an adult.

McNatt argues his deficits in adaptive functioning manifested prior to age 22, as shown by his reported history of learning disability and special education, his formal schooling ending during the ninth grade, his poor reading and spelling skills, his inability to follow written instruction, and his history of low-skilled work. McNatt claims to have dropped out of school in the eighth grade, to be unable to use a computer, to be unable to spell, to read at the fourth grade level, and to be able to do addition and subtraction but no other arithmetic.

McNatt's 1995 diagnosis of malingering during a neuropsychological evaluation was based on McNatt's extremely poor and inconsistent scores on written tests and not on his responses to the evaluator's questions about his history. A psychologist did not endorse a malingering diagnosis in a 2002 neuropsychological evaluation and suggested the earlier problem may have arisen due to different social circumstances at the time. There is no evidence McNatt is untruthful when he reports dropping out of school in the ninth grade due to both behavioral and academic problems. It is unclear if he took special education classes. He has a history of jobs requiring little cognitive skills, including landscaping, dish washing, and railroad labor in addition to the more recent flagger job. There is no evidence his cognitive functioning has declined after the age of 22. Even if McNatt had juvenile legal problems, that does not prove he had average general intellectual functioning without deficits in adaptive functioning prior to age 22; indeed, the criminal problems may have been caused by the intellectual disability. Other courts have relied on this type of circumstantial evidence in analyzing the requirements of Listing 12.05C. See Lloyd, 2012 WL 4794152, at *3 (qualified for special education in kindergarten,

serious emotional disturbance, expelled from eighth grade, low grades); Brooks, 2012 WL 4739533, at * 6 (valid adult IQ score "can be reflective of an impairment that manifested during the claimant's developmental period" and citing cases relying on special education courses, grades, and medical expert testimony); Pedro, 849 F. Supp. 2d at 1014 (special education classes, difficulties in reading, writing, or math, and low skilled work history relevant)

      I find McNatt has proven he meets the capsule definition in Listing 12.05.

      I will now address subpart C, which states:

> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

      All agree McNatt meets the IQ requirement of Listing 12.05C.

      The Appeals Council reasoned that McNatt's earning's record indicated his mental impairments had not resulted in significant work-related limitation of function.

      McNatt contends the phrase "significant work-related limitation of function" applies to the additional impairment apart from the limitations imposed by a claimant's low intellectual functioning.  He argues the Appeals Council misinterpreted the Listing when it applied that phrase to his intellectual functioning.  According to McNatt, his severe impairments other than his intellectual disability fulfill this listing requirement.

      I agree with McNatt's interpretation of the listing.  The "additional and significant work-related limitation" must be caused by either a physical impairment or a mental impairment other than the intellectual disability.

      "[A]n impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal."

Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Thus, a severe impairment has more than a slight or minimal effect on the claimant's ability to work, and it would fulfill the second prong of Listing 12.05C.

In addition to the intellectual disability, the ALJ found McNatt had severe impairments of lumbar degenerative disc disease, hypertension, and depression. Importantly, the disc disease limited McNatt to sedentary work. Accordingly, McNatt has proven subpart C to Listing 12.05.

In sum, I find McNatt has established he meets Listing 12.05C and is conclusively presumed to be disabled as of his alleged onset date of September 30, 2010.

## CONCLUSION

The decision of the Commissioner is reversed. The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this        27th         day of August, 2014.

                                          /s/ Garr M. King
                                        Garr M. King
                                        United States District Judge